ALLEN W. KNASEL, Plaintiff-Appellant, v. INSURANCE COMPANY OF ILLINOIS, Defendant-Appellee.

First District (5th Division)   No. 1—92—0574

Opinion filed September 24, 1993.

MURRAY, J., specially concurring.

Rigsby & McAuley, of Chicago (John G. McAuley, of counsel), for appellant.

James M. Dupree, of Chicago, for appellee.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiff, Allen Knasel (Knasel), appeals from the judgment entered against him in an insurance coverage dispute. Knasel brought an action against defendant, Insurance Company of Illinois (ICI), to recover damages for items of personal property belonging to his

live-in girl friend which were destroyed in a fire that occurred in his residence. Knasel also claimed that the insurance company's handling of his claim constituted unreasonable and vexatious conduct. Following a trial on stipulated facts, the trial court held that no coverage was available and entered judgment for defendant on both claims.

On appeal, Knasel raises two issues: (1) whether the trial court correctly held that the language in the ICI homeowner's insurance policy required him to request coverage for the personal property of a guest prior to a loss; and (2) whether the trial court properly entered judgment in favor of ICI on Knasel's claim that ICI engaged in unreasonable and vexatious conduct.

We affirm.

BACKGROUND

On May 27, 1989, a fire destroyed the interior of Knasel's home including items of personal property belonging to his live-in girl friend, Cynthia Garza (Garza). At the time, Knasel's residence was covered under a homeowner's insurance policy (the policy) issued by ICI.

The personal property coverage contained in the policy provides:

> "We cover personal property owned or used by an insured while it is anywhere in the world. At your request, we will cover personal property owned by:
>
> 1. Others while the property is on the part of the residence premises occupied by an insured;
>
> 2. A guest or a residence employee, while the property is in any residence occupied by an insured."

The policy contains the following exclusion:

> "We do not cover:
>
> * * *
>
> 5. property of roomers, boarders and other tenants, except property of roomers and boarders related to an insured."

At the time the fire occurred, Garza had been living with Knasel for approximately five months. At no time during the five months preceding the fire did Knasel notify ICI that personal property belonging to Garza was on his premises. After the fire, Knasel filed a claim with ICI which included personal property belonging to Garza. ICI denied coverage for Garza's property, stating that she

was a "tenant" in Knasel's home and that her property was therefore excluded under the policy.

On March 7, 1990, Knasel filed a two-count complaint for declaratory relief. Count I alleged that ICI's denial of coverage for Garza's personal property, on the basis that she was a "tenant," was erroneous. Count II alleged that ICI's treatment of Knasel's claim, including its failure to pay for property it had earlier agreed to cover, constituted unreasonable and vexatious conduct. Knasel requested that the court declare coverage and award costs and penalties to the plaintiff to the extent permitted under section 155 of the Illinois Insurance Code. Ill. Rev. Stat. 1991, ch. 73, par. 767.

Subsequently, Knasel filed a motion for summary judgment arguing that Garza was not a "tenant" in his home. In response, ICI abandoned its argument that Garza was a "tenant" and instead argued that she was a "guest" in Knasel's home. ICI asserted that property belonging to "guests" was not covered unless ICI received notice prior to a loss; since Knasel did not notify ICI of Garza's presence before the fire, no coverage was available.

On January 21, 1992, trial took place based upon the following stipulated facts:

"This action is filed by Allen Knasel against Insurance Company of Illinois ('ICI') by reason of ICI's failure to cover the personal property of Cynthia Garza in the Knasel residence. The Garza personal property was destroyed and/or damaged in a fire that occurred on May 27, 1989 at the Knasel residence.

Allen Knasel has been a long time policy holder of ICI. ICI issued the original policy on the 903 Glendale Road property in Glenview, Illinois in 1977 or 1978 and the ICI policy was renewed every year thereafter. Prior to November 9, 1988, Allen Knasel renewed the ICI policy for a one year period through and including November 9, 1989. After paying his premium, Allen Knasel was sent and received the ICI policy sometime immediately after November, 1988. He did not read the policy, however, he did 'browse' through the policy when it was received.

In October of 1988 Allen Knasel met Cynthia Garza. After dating Allen Knasel for a short period of time, Cynthia Garza moved into the Knasel residence in either late December of 1988 or early January of 1989. When Cynthia Garza moved into the residence, she and Allen Knasel were not married and were not married at the time of the fire.

When Cynthia Garza moved in, Allen Knasel did not intend that Cynthia Garza was going to live there permanently. It was his thought that she could live there as long as they were seeing each other. Allen Knasel did not require or ask Cynthia Garza to pay any rent or make any monetary contribution to utilities. Cynthia Garza shared in various grocery expenditures and shared keeping the house clean.

Allen Knasel did not notify anyone at ICI or anyone at his insurance agency that Cynthia Garza was a resident in the house and brought with her certain items of personal property. At no time after Cynthia Garza moved in did Allen Knasel request that any of Cynthia Garza's personal possessions be listed or covered under his ICI policy."

Following argument, the trial court made the following findings:

(1) Cynthia Garza was not a tenant of Allen Knasel's;

(2) Cynthia Garza was a guest on the property of Allen Knasel on May 27, 1989;

(3) notice to ICI for property of guests was required prior to a loss; and

(4) Knasel did not provide notice to ICI that Cynthia Garza's property was on the premises.

The trial court entered judgment in favor of ICI on both counts of Knasel's claim.

OPINION

I

Knasel does not dispute the trial court's determination that his live-in girl friend, Garza, was a guest. Instead, Knasel contends that the trial court erred in holding that the language in the ICI policy required him to request coverage for the personal property of his guest *prior to a loss*. Knasel asserts that the obvious interpretation of the policy's language is that if a guest suffers a property loss, ICI will cover it if the insured requests so after the loss. Alternatively, Knasel argues that the language is ambiguous and must be interpreted under Illinois law to provide coverage.

Research has revealed no case law in Illinois or elsewhere which has interpreted the language of the policy provisions at issue here. Thus, this case presents an issue of first impression.

Although ambiguities in an insurance policy will be construed against the insurer, courts will not distort the language of a policy to create an ambiguity where none exists. (*Allstate Insurance Co. v.*

*Boston Whaler, Inc.* (1987), 157 Ill. App. 3d 785, 790; *State Farm Mutual Automobile Insurance Co. v. Byrne* (1987), 156 Ill. App. 3d 1098, 1100.) Words in an insurance policy must be given their plain and ordinary meaning. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486.) "If the words of a policy can reasonably be given their plain, ordinary, and popular meaning, the provisions should be applied as written and the parties should be bound to the agreement they made." *Western Casualty*, 105 Ill. 2d at 495.

■ The language at issue reads, *"[w]e cover* personal property owned or used by an insured while it is anywhere in the world. *At your request, we will cover* personal property owned by *** a guest."* (Emphasis added.) As ICI points out, the clause pertaining to the insured's property is written in the present tense, "we cover." The clause concerning a guest's property is written in the future tense, "we *will* cover," and makes such additional coverage subject to "your request." The only reasonable interpretation of this language is that no coverage exists until the insured notifies the insurance company of the existence of guest property on the premises and requests additional coverage. Such notice would provide the insurance company with the opportunity to adjust the premiums accordingly. Because Knasel failed to notify ICI of the presence of Garza's property on his premises before the fire, no coverage for Garza's property existed at the time the property was destroyed. Accordingly, we hold that the trial court correctly entered judgment for ICI on Knasel's claim for coverage of Garza's property.

## II

Knasel next contends that the court erred in failing to find that ICI engaged in unreasonable and vexatious conduct pursuant to section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1991, ch. 73, par. 767). Knasel claims that the following actions taken by ICI constitute unreasonable and vexatious conduct: (1) ICI initially denied coverage for Garza's property because it claimed she was a tenant, and then in response to a motion for summary judgment asserted for the first time that Garza was a guest; (2) ICI has not paid for the bedroom set which was jointly used by Knasel and Garza; and (3) ICI repeatedly attempted to take the deposition of Garza despite the existence of a protective order. We disagree.

Section 155 of the Illinois Insurance Code provides in pertinent part:

"§155 Attorney fees. (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, [and] other costs ***." Ill. Rev. Stat. 1991, ch. 73, par. 767.

The granting of fees and penalties pursuant to section 155 is entrusted to the sound discretion of the trial court, and absent an abuse of discretion, the ruling of the trial court will not be disturbed. *Dark v. United States Fidelity & Guaranty Co.* (1988), 175 Ill. App. 3d 26, 30-31; *Meier v. Aetna Life & Casualty Standard Fire Insurance Co.* (1986), 149 Ill. App. 3d 932, 940.

■ With respect to the first instance of allegedly vexatious conduct, ICI argues that Knasel has waived this argument. ICI asserts that Knasel's claim of vexatious conduct which appears in count II of Knasel's complaint does not make reference to ICI's actions relating to Garza's personal property, but instead relates solely to ICI's alleged failure to pay for the joint furniture of Knasel and Garza. The record does not support ICI's assertion; count II of Knasel's complaint does in fact refer to ICI's actions relating to both Garza's personal property and property which was jointly used. However, the record does not demonstrate and Knasel does not explain why ICI's delay in asserting that Garza was a "guest" rather than a "tenant" amounts to unreasonable and vexatious conduct.

■ Next, Knasel argues that ICI's continuing refusal to pay for the property which was jointly used by Knasel and Garza constitutes unreasonable and vexatious conduct. Knasel asserted at trial that ICI still had not paid for furniture which was jointly used even though ICI had previously agreed to do so. However, the record indicates that ICI paid out the sum of $65,560 to Knasel, and ICI asserts that the cost of the jointly used furniture was included within this amount. Plaintiff does not point to any evidence in the record which refutes ICI's assertion, and this court has found none.

■ Finally, Knasel argues that ICI repeatedly and unreasonably subpoenaed for the deposition of Garza, despite the existence of a protective order. However, Knasel did not pursue this claim in the trial court and is therefore barred from doing so here.

After careful review of the record, we perceive no abuse of discretion in the trial court's refusal to award relief under section 155 of the Illinois Insurance Code.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

GORDON, P.J., concurs.

JUSTICE MURRAY, specially concurring:

I concur with the majority, but believe the entire litigation could have been avoided if the involved insurance company kept its policy language up with modern America's concepts.

As the majority opinion indicates, the subject property belonged to Knazel's "live-in girl friend." A "guest" is "a person entertained in one's house or at one's table." (Webster's Third New International Dictionary 1008 (1986).) The same dictionary defines "live in" as a verb meaning "to lodge in one's place of employment." (Webster's Third New International Dictionary 1324 (1986).) A "live in" in modern American culture means something more than a mere guest; it is closer to a "lodger." Lodger is an archaic word meaning (according to the cited dictionary), "one that lives or dwells in a place: Inhabitant, Occupant." (Webster's Third New International Dictionary 1329 (1986).) "Girl friend," according to the cited dictionary, means among other things, "the female partner in an intimate *** relationship." (Webster's Third New International Dictionary 959 (1986).)

Following these well-defined meanings in modern American English, a "live-in girl friend" is in a category other than a "guest." She is a "dwelling partner in an intimate relationship with the occupant of a house."

If the parties had not stipulated that Knazel's "live-in girl friend" and now his wife was his "guest," in view of the policy not mentioning "live ins," I would reverse and remand to determine what the insurer did mean by the term "guest" used in the policy when it applies to "live ins."